May it please the court, my name is Jonathan Breidbill from the Justice Department. I'd like to reserve three minutes for rebuttal. I'd like to start my argument by homing in on the statutory text of 303 D2, the historic context in which the theory of constructive submission arose and the general principle that this and other courts apply when trying to determine whether a non-discretionary duty exists that is judicially enforceable. The No date, no deadline, no duty. And let me explain what I mean by that. In our brief we cite to this court's decision, in our Children's Earth Foundation, a decision that was drafted by Judge McEwen. There, this court rejected a claim that a different portion of the Clean Water Act had a non-discretionary duty by EPA under the Clean Water Act that was a far stronger candidate for a mandatory duty than the provision here. And that's because it states specifically, saying that it shall take certain actions, quote, at least every five years. Now, one of the cases that our Children's Earth cites to as foundation and guidance for the standard in there about a readily ascertainable, judicially enforceable non-discretionary duty is Sierra Club v. Thomas, a seminal case in this area from the D.C. Circuit. And the D.C. Circuit explained the significance of a date-certain deadline for action against, quote, in order to impose a clear-cut, non-discretionary duty, we believe that a duty of timeliness, and that's what we're dealing with here, Your Honor, the question of whether there was a statutorily imposed duty of timeliness, quote, must categorically mandate that all specified action be taken by a date-certain deadline. And the court further explains, quote, in the absence of a readily ascertainable deadline, it will be almost impossible to conclude that Congress accords a particular agency action such a high priority as to impose on the agency a categorical mandate. Now, why is that relevant here? Well, let's go and look at the language of this statute, 303d2. It says, each state shall submit to the administrator from time to time, but here's the critical language for understanding the theory of constructive submission. Quote, with the first such submission not later than 180 days after the date of publication of the first identification of pollutants under this section. For his approval, the waters identified and the loads established under the paragraphs of this subsection. Your Honors, this 180-day date-certain for the states to have stood up their TMDL programs and to start submitting any TMDLs is actually the key statutory hook and language that underlies the theory of constructive submission. And I can refer to the Seventh Circuit decision in Scott specifically where this is shown, 741 F. 2nd. 996. Quote, the states were then required within 180 days to promulgate TMDLs for those waters defined in the statute, CWA section 303d2. The allegation of the complaint that no TMDLs are in place coupled with the EPA's admission that the states have not made their submission raises the possibility that the states have determined that TMDLs for Lake Michigan are unnecessary. Now later, the Seventh Circuit makes clear this is the key statutory hook in 303d2 when it distinguishes what it's dealing with in Scott from other cases where it didn't find a non-discretionary mandatory duty. Quote, that holding has no to act for years after thus state deadline for submissions has passed. Now it's important to recognize for present purposes, this is the only date certain deadline in 303d2 and it was this initial obligation to stand up TMDL programs and quote, make that first submission of a TMDL. So if I understand your position from the briefing, is that the constructive submission rule can't apply if a state has submitted one TMDL? Is that right? That's exactly right, Your Honor. And that's why it's tied to this language of the state of the statute. Let me ask you in following up, how many states have submitted zero TMDLs? At this point, none of the states have submitted zero TMDLs, Your Honor. And what I'm having trouble reconciling with your position then is if you submit a TMDL for a particular state or segment of a river, you're off the hook forever under your position? That's what the statute says, Your Honor, because the statute only has a date certain deadline to make that first initial submission of a TMDL to actually stand up the program. What is EPA's current position as to what's going on with these two rivers? What is it that you think is going on? You're standing, you can't do anything until the states send you something? Is that the position? So what this to bring you up to date, Your Honors. So although this is not in the record, what EPA has done now is they have prepared an updated model and other technical documents relating to the development of the TMDL. They've had that information peer reviewed by outside sources. They've also shared it with the federal, state and tribal authorities and received comments on those technical materials, Your Honor. They've also drafted many portions of the TMDL at this part, but there are key details, of course, that rely upon those technical documents and the finalization of those technical documents that remain to be resolved, Your Honors. So turning back to the statute. Go ahead. That doesn't really answer my question. I mean, it gets part of it. All right. So EPA is currently drafting some guidelines or something that might be an appropriate, might be the framework for a TMDL. Is that correct? That's right. And then what's going to happen once they get all their comments? Is EPA going to issue it or are they going to say, now we've got this good draft, we'll just ship it to Oregon and Washington and then you guys can issue it and we'll approve it because we've previously seen it? I don't think EPA has finalized that determination, Your Honor. But frankly, it isn't terribly relevant to the question of whether EPA has a mandatory duty to act in the event of the state not having actually taken an action yet. Counsel, you can press your argument. I'd really love to get an answer to my question. So I don't have an answer to your question, Your Honor. Well, that would be a good answer. It would be responsive to what I asked you. But the key now with respect to the statute is, what does the statute actually say with respect to what the duty is or isn't at this point? And the language that applies now, the TMDLs have been, quote, first submitted, is merely that states have to continue to now submit TMDLs from time to time, Your Honor. And this is a very discretionary standard both as to states and to the EPA. Now this is important to keep in mind because this court in the Alaska Center for the Environment Decision actually relied upon the fact that the duty or the alleged duty under the theory of constructive submission is one that only goes to a statewide level submission, Your Honor. Because EPA argued that those plaintiffs lacked standing in that case, Your Honor, because the plaintiffs had failed to establish injury as to individual waterways. And this court said they don't need to show standing as to individual waterways because the theory of constructive submission doesn't reach that far. It said specifically, quote, the act requires the states to develop these lists of water quality limited segments and TMDLs and submit them to EPA periodically. However, the first submission was due no later than June 26, 1979. It then rejected the United States' argument that they needed to establish standing to individual waters because the theory of constructive submission doesn't work, reach that far. Quote, their injury is the result of EPA's failure to comply with the CWA to establish TMDLs for the state of Alaska. The CWA imposes no narrower obligations. So can I stop you for just a moment? Certainly, Your Honor. We're talking as if TMDLs are some global item, but there's different kinds of TMDLs, right? Well, for different water segments, yes, Your Honor. For different water segments, and then are there also different TMDLs for temperature and then for other criteria as well? You're exactly right, Your Honor. This is a temperature TMDL. So first you've got, we have two rivers here, correct? Snake and the Columbia? That's right, Your Honor. And there's TMDLs that can be issued for different segments of the river? That's right, Your Honor. And within the different segments of the river, there's different categories of TMDLs that can be issued to make up some picture of what the pollution is, correct? Yes, all exactly correct. And if I understand your position, if a TMDL was submitted on one aspect, on one segment of a river, that meets the statute for all TMDLs for the whole river? That's what Congress's statute says, Your Honor, and let me explain to you how that is so. So if you go to this court and the Supreme Court's precedent as to how you interpret the existence or nonexistence of mandatory duties and the waiver of sovereign immunity in Wild Earth Guardians, you need to have a specific unequivocal command from the text of the statute at issue, right? But it's instructive to actually read and look at the statute that was at issue in Wild Earth, and how that standard was applied to the statute at issue in Wild Earth. And in particular, this court wrote, quote, given Section 166A's ambiguity, we cannot say that the existence of a nondiscretionary duty is clear-cut or readily ascertainable from the statute, 772F3 at 1182. Now the reason why the presence of ambiguity is key is because the Supreme Court has recognized that as such in FAA v. Cooper 566284, which is cited on page 18 of our brief. In particular, the Supreme Court gives a fairly recent definition for what, quote, ambiguity means for a waiver of sovereign immunity. It means, quote, ambiguity exists if there is a plausible interpretation of the statute that would not authorize suit against the government. No court of appeals has yet wrestled with this canon of statutory construction and this wording, 303D2, Your Honor. But when you look at this statute and the Clean Water Act as a whole, it's clear that the EPA's interpretation that there is no mandatory duty here is plausible because Congress actually spoke with the requisite specificity in other sections of the statute, and I can show you. To me, it seems implausible the way, if I reconcile it with your position, so I would appreciate your view as to why you think your position is also consistent with other portions of the statute. Certainly, Your Honor. So, for example, 303I states specifically, clearly, and unequivocally, quote, not later than 42 months after October 10, 2000, so a date certain deadline, each state having coastal waters shall adopt and submit to the administrator water quality criteria and standards. If a state fails to adopt water quality criteria, the administrator shall promptly propose regulations for the state setting forth those things. 1329D similarly states, if the duty set forth there, quote, if a governor of a state does not submit the report, 1314L, if a state fails to submit control strategies, that fails to submit language is missing from 303D2. There is no obligation for EPA to act if the state fails to submit, Your Honor. It merely says what happens if there is an actual submission, but there's no requirement for EPA to act if there is not a submission, and Congress knows how to do that and has done it repeatedly if they want to have that obligation placed on states and then EPA to act. Instead, Congress has given the states vast discretion as to prioritize which waterways and which TMDALs to develop at what period of time, and then granted EPA immense discretion as to judge when, in the event that a state has not taken action, EPA will respond, and EPA has other ways. Do you want to reserve your time, but wait for Jeff Bivey's question first? Yeah, I'd like to ask just one question before you sit down. So, counsel, you've argued forcefully that we shouldn't recognize the constructive submission doctrine, but what do we do with San Francisco, the San Francisco case? Haven't we already recognized that? That is, can this panel disapprove the constructive submission doctrine? Absolutely, Your Honor. Under this Court's precedent, in order for the dictum of a prior decision to be binding, an issue must be fairly presented, fully debated, and refined through the adversary proceeding. The United States didn't dispute the validity of the theory of constructive submission. It didn't brief this issue, Your Honor. You weren't presented, in that case or any of these cases, with these canons of statutory interpretation that apply. But we have the interpretation. And it's a lengthy discussion. There's a discussion of other interpretations, not just the Seventh Circuit that's discussed. We discussed the Tenth. We discussed district courts. We embraced the decision and then distinguished it because it actually didn't apply in that case. Well, that's beyond just mere dicta, counsel. So to be clear, if you embrace all the prior circuit court decisions, you should reverse the district court decision because all the prior circuit court decisions recognize this deadline, which is reflected in the statute, that all the theory of constructive submission does is go to the point of the obligation to actually stand up and start promulgating TMDLs as a general matter. But no court of appeals has ever permitted what this district court did here, which is to begin imposing a mandatory duty and begin examining the intent of states as to whether they have a desire or lack of desire to abandon a TMDL and then abandon that TMDL and looked at the intent of EPA and whether EPA has, under the guise of a mandatory duty lawsuit, really unreasonably delayed in responding to a non-mandatory state action. Thank you. Thank you, Your Honor. Good morning, Your Honors. Brian Hurlbut for Columbia Riverkeeper. EPA could not point to a single case rejecting the constructive submission doctrine. It's a doctrine that's been around for a long time, and every court that's considered it has either adopted it or at least entertained it as a possibility. Not a single one has rejected it. As you noted, the Seventh and Tenth Circuits adopted it in the Scott and Hayes cases, and this court adopted it in the Baykeeper case. Most recently, the only other court of appeals to consider it was the Fourth Circuit in the OVEC decision, Ohio Valley Environmental Coalition, and in that case, they declined to rule specifically on whether they were adopting the doctrine, but they applied it to the facts there and found no constructive submission had occurred because the state of West Virginia had a plan with a date certain by which they were going to issue all the TMDLs that were at issue in that case. And the court there, despite not deciding whether to adopt the doctrine or not, still signaled that they were likely to, even in this kind of case that's not a statewide failure case like Baykeeper, because there the court said, well, there's not been a constructive submission yet. If the state has what it said was continued intransigence, then that could very well change things. So every circuit court that's looked at it has adopted the doctrine, or in the Fourth Circuit's case, at least signaled that it may be willing to. District courts around the country have reached similar results. That includes at least three cases where EPA made the same clear statement rule arguments that it makes here. Those are all cited in our brief in footnote five. They include the Kingman Park Civic Association case out of the District of Columbia, as well as others. And you're right that the Baykeeper decision is binding here. This court gave it reasoned consideration and decided the issue, and that's all that this circuit requires to create binding law. EPA is trying to add additional requirements as to what makes binding law in this circuit, saying that it needs to be fully debated and argued before the court. All EPA cites to in their brief for that is the US v. Johnson decision to a portion of Judge Kaczynski's decision that was not adopted by the majority of the court, and cites to the US Supreme Court case, which may govern how that court views what makes binding law, but has no bearing on what this court decides makes binding law. This case deals with states who simply not submitted the measurements, right? This case, yes. They have not submitted a pollution budget or a TMDL for the Columbia and Lower Snake Rivers. It does not deal with states who have refused to do so? So here what the states have done is worked together with EPA in the early 2000s to come up with a plan. Doesn't sound like refusal to me. Refusal, right. There is a refusal based on their inaction up till now, and based on their lack of any plan to do it. And that's what courts have consistently looked at starting with the Seventh Circuit's decision in Scott in the 1980s. There the court found no TMDL had been submitted for Lake Michigan. That's what was alleged. And they remanded to the district court to consider whether in fact there was no TMDL and said that if there isn't, you may move forward and find a constructive submission unless EPA can come forward with evidence showing that the TMDL is or will be submitted soon. Would you respond to the government's argument that if you have a TMDL on a segment of a river and one aspect of what might be a TMDL, then you've satisfied everything and there's no further requirements? Yeah, that is not right. I think they're trying to say that that helps their clear statement rule argument. But the Clean Water Act, Section 303D, requires a TMDL for every impaired water body and for every pollutant or criteria for which it's impaired. So if the lower half of the Columbia River had a temperature TMDL in place, the rest of the Columbia and the lower stake would still need a temperature TMDL. A TMDL is required for every impaired water body. The key difference between the Baykeeper case and this case is that in Baykeeper, this court found that the state of California had a credible plan. At issue there were all the TMDLs in the state of California. And even though California had been slow to get started on issuing TMDLs, the court found that it had issued some by the time the case was moving forward and EPA was able to present  a single TMDL in the state of California within 12 years. The situation was very similar in Hayes v. Whitman in the 10th Circuit. The state didn't get off to a quick start submitting TMDLs, but by the time the case moved forward, it submitted some and they also had a 12-year plan to complete every single TMDL in the state of Oklahoma. Here on the other hand, there is no plan to complete and issue the TMDL. So in that point then, leaving aside the substance of what Mr. Brightfield talks about in terms of what the EPA is doing now, let's just take it as a given that EPA is in action or in some activity at this point. Does that change the state's obligation? The state ultimately has the obligation to submit a TMDL, and if they don't, then we argue that EPA does. Here, relying on EPA could be a perfectly credible plan for the state, but it's not credible in this situation. There's nothing wrong with the state relying on EPA to do the TMDL for it, but EPA can't give you a date as to when they're doing it. They were unable to tell you whether they or the states would be issuing the TMDL, and all they've done is mention things that they said were not in the record that EPA is doing with no clear end result as to when that will be. Again, other courts that have excused constructive submissions have found that even though there may have been some kind of long-term failure, there was a credible plan with some kind of deadline by which they could be held accountable. And here, that's not the case. I'd like to add that without a TMDL, there have been severe consequences in the Columbian Lower Snake River. The Columbia River is the second-largest river system in the U.S. by flow after the Mississippi. It once had the world's largest salmon runs. Many species have already gone extinct, and the 13 that remain are listed as threatened and endangered. And without a temperature TMDL, temperature problems have only gotten worse. In 1998, the states listed the rivers as impaired for temperature pollution because it was harming It was exceeding levels that are known to be harmful to salmon and steelhead. It's only gotten worse since then, and in 2015, the river recorded the highest temperatures in modern times, which led to serious trouble with fish trying to migrate up and down the river. Endangered Snake River sockeye salmon, only 4% made it up the main stem river to try and return to their spawning grounds, whereas typically in recent years, somewhere around 44% to 77% have made it. In their briefing, EPA suggests that there are disputed facts, disputed material facts, and there really aren't. There are just a few key facts that show that there's been a prolonged failure here and that EPA has no credible plan to correct that failure. As I said, the rivers were listed in 1998. That was 21 years ago. That's a prolonged failure. And again, EPA and the states had a plan to work on the TMDL in the early 2000s. There was a memorandum of agreement between the states and EPA. Subsequent letters and communications where the states asked EPA to issue the TMDL, EPA accepted that offer and proceeded to draft the TMDL, which it released in 2003, a draft version, stating that EPA would issue the TMDL. But by the end of 2003, as EPA admits, it suspended working on the TMDL, and there's still no TMDL in place, and EPA can't point to any deadline by which it's ever going to be done or who's going to do it. Do you have a response to opposing counsel's 303-D2 argument and his comparison of other language in that section that does seem to – he pointed to I, that we have some very strict language. It does appear that in the same statute that Congress was very, very specific about the consequences for state inaction. There's a hard – they're hard fixed dates. Can you tell us whether D2 has – how you read that to get the same kind of strict language? Yeah, you're right, Your Honor. So D2 does not have the same kind of language about what should happen if a state fails to submit a TMDL. It's silent about that. And courts have consistently looked at that and found that because 303-D requires EPA to step in when a state submits an inadequate TMDL, that clearly Congress also expected EPA to step in if a state fails to submit a TMDL. Failure over some prolonged period to submit a TMDL is essentially the same as submitting an inadequate TMDL. And if that weren't the case, it would undermine the Clean Water Act, and that's why courts have consistently followed the constructive submission doctrine. I'd like to address the – our children's earth case that applied the clear statement rule to find no discretionary duty under the Clean Water Act in that case, which was not a constructive submission case. And as EPA's counsel pointed out in that case, the statutory provision at issue was to be ambiguous, and this court said that it required going through a regulatory and legislative maze in order to find a mandatory duty, and that's just simply not the case here. It's not ambiguous. It seems to have just been some kind of assumption or oversight that Congress clearly expected TMDLs to be submitted by states, and that's why courts have adopted the constructive submission doctrine. Another – a more useful case to consider is NRDC v. EPA. That was another Ninth Circuit decision in 2008 that came out shortly after our children's earth. It also involved whether there was a Clean Water Act mandatory duty. And in that case, similar to here, the court found that the duty that was at issue was not – the statute was silent about that duty that was at issue, similar to the one at issue here, and it found that it wasn't plausible to read it the way EPA did, and it found that there was also a mandatory duty there. Another way to look at the clear statement rule argument, other than finding that this does comply with the clear statement rule, because 303D clearly requires EPA to step in when there's an inadequate TMDL, is also to recognize that the clear statement rule is just one tool that courts use when looking at mandatory duties. In the foundational clear statement rule case, Sierra Club v. Thomas, that court recognized that there could be exceptions to that rule, and this court's decision in NRDC v. EPA  I'd like to emphasize that this is also a little different than other recent district court decisions on constructive submissions where there was an individual or subset of TMDLs at issue. The Sierra Club v. McLaren case out of the Western District of Washington and the Environmental Law and Policy Center case out of the Northern District of Ohio, again, those were constructive submission cases where courts found there was no constructive submission because they had found that there were plans in place and things that were being done in the interim. If we are to make a determination of whether a state has clearly and unambiguously basically abdicated or indicated its intent that it's not going forward with the TMDL, what's the evidence we use? Yeah. The evidence is whether there's been a prolonged failure to submit the TMDL and whether there's some kind of credible plan in place to correct that failure. And that starts with the first constructive submission case, the Scott decision in the Seventh Circuit. It was in footnote 11 of that case that the court said, even if there has been a prolonged failure, you look to see if EPA can come forward with evidence that the TMDL will be issued. And since then, in Hayes and Baykeeper, those are the same factors that courts have considered. Is there a prolonged failure? And even if there is, can we excuse that because there's some kind of plan in place? EPA suggests that you need to somehow discern the actual intent of the state, which I don't even know what that means, or how you would figure that out other than something like this. Have they submitted the TMDL? How long has it been? And is there any plan to correct that failure? No further questions, Your Honor. I'll sit down. No. Thank you. You've used up your time, but I'll give you another minute for your rebuttal. Thank you, Your Honor. Quick shotgun of points. So the Scott case is distinguishable because in the Scott case, they were actually applying a date-certain deadline, 180 days. The language of the statute that applies now that this Court needs to interpret is the time-to-time, which is an entirely discretionary standard. Second, a court has rejected the constructive submission theory, NRDC v. Scott, 30 F sub 2nd 369 from the Southern District of New York in 1998, and interestingly enough, actually looked at the statute and looked at the fact that in the Scott case was actually interpreting the 180-day date-certain deadline, which is now inapplicable in this situation. Do we have any circuit courts that have affirmatively rejected the principle? No circuit court has actually interpreted the time-to-time language. There's been a lot of follow-the-leader here, Your Honor, on the Scott decision. But the Fourth Circuit has actually rejected the expansion of the theory of constructive submission in the manner that the district court did. I didn't say that they satisfied everything. They satisfied the duty with respect to the date-certain deadlines, Your Honor. With respect to the oversight, Your Honor, Congress's oversight, I would submit that counsel for Waterkeeper acknowledged that this is a plausibly ambiguous, if not ambiguous, statute if they're saying that Congress made a mere oversight and can't point to actual specific language. No date, no deadline, there's no duty here, Your Honors. Thank you. Thank you. Thank both counsel for your argument today. The case of Columbia Riverkeeper v. Wheeler is submitted.
judges: Hawkins, McKeown, Bybee